O

1

2

3

4

5

6

7

# United States District Court
# Central District of California

8

9

10

| | |
|---|---|
| DEL RECORDS, INC. et al., | Case № 2:16-cv-03666-ODW (KSx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [107]** |
| JG MUSIC et al., | |
| Defendants. | |

11

12

13

14

15

16

## I.    INTRODUCTION

17

18    Plaintiffs Del Records, Inc. ("Del Records") and Del Entertainment, Inc. ("Del Entertainment") bring this action against Defendants JG Music f/s/o Jose Ariel Camacho Barraza, Cesar Ivan Sanchez Luna, and Omar Samuel Burgos Gerardo p/k/a "Ariel Camacho Y Los Plebes Del Rancho" ("JG Music"), Jesus Jaime Gonzalez Terrazas ("Gonzalez"), and DOES 2 through 10 for breach of contract, inducing breach of contract, and intentional interference with contract.  (First Am. Compl. ("FAC"), ECF No. 104.)  Defendants move to dismiss the FAC.  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 107.)  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.[1]

19

20

21

22

23

24

25

26

27

28    ---
[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND[2]

Incorporated in 2014, Del Records and Del Entertainment (collectively, "Del") are entertainment companies owned by Angel Del Villar.  (FAC ¶ 12.)  Del Records is a Mexican-American music record label, and Del Entertainment provides personal management services for Del Records's artists.  (*Id.*)

JG Music is "the Mexican loan-out company" that provides the services of the musical group, "Los Plebes Del Rancho De Ariel Camacho" (the "Band"), formerly known as "Ariel Camacho Y Los Plebes Del Rancho."  (*Id.* ¶ 13.)  Gonzales created JG Music, has conducted business publicly as JG Music, and owned JG Music at all relevant times.  (*Id.* ¶ 14.)

### A.   Del-JG Music Agreements

On or around March 24, 2014, Del and JG Music entered into an exclusive recording agreement (the "Recording Agreement") and a personal management agreement (the "Management Agreement," and collectively with the Recording Agreement, the "Del-JG Music Agreements") for an initial two-year term.  (*Id.* ¶¶ 15, 18.)  Del, on Gonzalez's instruction, prepared the agreements to indicate that Felipe De Jesus Hernandez Rojas ("Hernandez") is the exclusive representative of and has power of attorney for the Band.  (*Id.* ¶ 21.)

The Recording Agreement required JG Music to (1) make the Band available for appearances that Del deems necessary to promote the Band's albums, (2) consult with Del about any and all third-party sponsorships, endorsements, and merchandizing opportunities for the Band before entering into them, and (3) deliver four albums containing twelve original master recordings of the Band during the initial two-year term.  (*Id.* ¶ 17.)  The Management Agreement required, among other things, that JG Music (1) advise Del Entertainment of all entertainment-related employment offers received by the Band, (2) do all things necessary and desirable to promote the Band

---

[2] All factual references derive from Del's FAC or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1    and its earnings, and (3) refrain from making any commitment that would interfere
2    with the Management Agreement's obligations.  (*Id*. ¶ 20.)
3         Following the execution of the agreements, the Band began producing albums
4    and performing concerts in the United States and Mexico pursuant to the terms of the
5    agreements.  (*Id.* ¶ 23.)
6    **B.    Camacho's and Hernandez's Death**
7         In February 2015, the Band's lead member, Jose Ariel Camacho Barraza
8    ("Camacho"), died in a car accident.  (*Id.* ¶ 24.)  Shortly thereafter, in April 2015,
9    Hernandez also passed away.  (*Id.*)  To the extent Hernandez owned any portion of JG
10   Music, Gonzalez then negotiated with Hernandez's surviving spouse to purchase his
11   ownership of JG Music.  (*Id.*)  Gonzalez is the successor-in-interest to JG Music "by
12   virtue of [Gonzalez] claiming to have purchased JG Music."  (*Id.* ¶ 14.)
13   **C.    Del-Lopez Agreement**
14        On May 7, 2015, Del Records signed Jose Manuel Castro Lopez ("Lopez") as a
15   solo artist and to replace Camacho in the Band.  (*Id.* ¶ 25.)  The agreement between
16   Del Records and Lopez (the "Del-Lopez Agreement") gave Del Records the exclusive
17   rights to (1) exploit Lopez's master recordings, (2) use Lopez's name and likeness in
18   albums produced under the agreement, (3) book Lopez for all live music performances
19   and appearances, and (4) receive one album per year consisting of thirteen to fifteen
20   original master recordings of Lopez.  (*Id.* ¶ 26.)
21   **D.    2016 Tour in the United States and Promotion of "Recuerden Mi Estilo"**
22        In 2016, pursuant to the Del-JG Music Agreements and Del-Lopez Agreement,
23   Del scheduled the Band to hold twenty-one concerts and promotional appearances for
24   its new album, "Recuerden Mi Estilo," in the United States.  (*Id* ¶¶ 27–28.)  The Band
25   appeared at only one of the scheduled concerts.  (*Id.*)  The Band also failed to appear
26   at any of the album's scheduled promotional events.  (*Id.* ¶ 28.)  Del asserts Gonzalez
27   and JG Music caused Lopez and the Band to fail to appear at these concerts and
28   promotional events.  (*Id*. ¶¶ 27–28.)

1    **E.    Breach of the Agreements**

2        Without Del's knowledge, approval, or authorization, Gonzalez and JG Music

3   sold merchandise related to the Band and arranged for the Band to hold concerts in

4   Mexico.  (*Id.* ¶ 29.)  Gonzalez and JG Music failed to deliver the three albums

5   required by the Recording Agreement.  (*Id.* ¶ 30.)  Gonzalez and JG Music also

6   caused Lopez to fail to deliver an album required by the Del-Lopez Agreement.  (*Id.*)

7   In addition, Gonzalez and JG Music caused Lopez and the Band members to post

8   unauthorized videos on social media in violation of the Recording Agreement and

9   Del-Lopez Agreement.  (*Id.* ¶ 31.)

10   **F.    Del's Notice of Breach**

11       On March 17, 2016, Del's attorneys sent letters to Gonzalez, JG Music, and

12   Lopez to notify them of their breach of the agreements.  (*Id.* ¶ 32.)  On March 22,

13   2016, Del's attorneys sent another letter to notify Gonzalez and JG Music of their

14   intent to exercise their option to renew the Recording Agreement and Management

15   Agreement, as permitted under those agreements.  (*Id.* ¶ 33.)

16   **G.    Procedural History and the Instant Motion**

17       On May 25, 2016, Del initiated this action against JG Music, Lopez, and DOES

18   1 through 10, asserting causes of action for only breach of contract.  (Compl., ECF

19   No. 1.)  Del then attempted to serve JG Music and Lopez in Mexico for over a year.

20   (*See* Status Reports re Service, ECF Nos. 11, 14–22.)  During this period, Gonzalez,

21   Lopez, and Cesar Ivan Sanchez Luna filed their own action against Del and Angel Del

22   Villar.  (Decl. Maryann R. Marzano re Service ¶¶ 3, 9, ECF No. 17); *Terrazas v. Del*

23   *Records Inc.*, No. 2:17-cv-02152-ODW (KSx) (C.D. Cal filed Mar. 19, 2017)

24   (hereafter, the "Related Case").  Gonzales and Lopez, among others, also filed a

25   petition against Del with the California Labor Commissioner.  (Stip. Stay 2, ECF

26   No. 38.)  On January 22, 2018, at the parties' request, the Court denied Gonzalez's

27   first motion to dismiss without prejudice, (Order First Mot. Dismiss, ECF No. 28),

28

1 | and stayed this action pending the resolution of the petitions before the California

2 | Labor Commissioner, (Order Stay, ECF No. 39).

3 |       On November 9, 2023, after a stay of almost six years, the parties informed the

4 | Court that the California Labor Commissioner dismissed the petitions before it.

5 | (Status Report, ECF No. 94.)  Accordingly, the Court lifted the stay, and Gonzalez

6 | and JG Music answered the Complaint.  (Order Lifting Stay, ECF No. 96; First

7 | Answer, ECF No. 97.)

8 |       On June 20, 2024, Del filed the First Amended Complaint to remove claims

9 | against Lopez, replace DOE 1 with Gonzalez, and add causes of action against

10 | Gonzalez and JG Music for inducing breach of contract and intentional interference.

11 | (Stip. File FAC ¶¶ 3–4, ECF No. 102; *see* FAC.)  Defendants now move to dismiss

12 | the FAC under Federal Rule of Civil Procedure ("Rule" or "Rules") 12(b)(6) and

13 | 12(b)(2).  (Mot. 1.)

14 | **III.**      **LEGAL STANDARD**

15 | **A.**     **Rule 12(b)(6)**

16 |       A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable

17 | legal theory or insufficient facts pleaded to support an otherwise cognizable legal

18 | theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To

19 | survive a dismissal motion, a complaint need only satisfy the minimal notice pleading

20 | requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v.*

21 | *Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to

22 | raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*,

23 | 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual

24 | matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*,

25 | 556 U.S. at 678 (internal quotation marks omitted).

26 |       The determination of whether a complaint satisfies the plausibility standard is a

27 | "context-specific task that requires the reviewing court to draw on its judicial

28 | experience and common sense."  *Id.* at 679.  A court is generally limited to the

1   pleadings and must construe all "factual allegations set forth in the complaint . . . as

2   true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*,

3   250 F.3d 668, 679 (9th Cir. 2001).   However, a court need not blindly accept

4   conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.

5   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

6       Where a district court grants a motion to dismiss, it should generally provide

7   leave to amend unless it is clear the complaint could not be saved by any amendment.

8   *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

9   1025, 1031 (9th Cir. 2008).   Leave to amend may be denied when "the court

10  determines that the allegation of other facts consistent with the challenged pleading

11  could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture

12  Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).   Thus, leave to amend "is properly

13  denied . . . if amendment would be futile." *Carrico v. City & County of San

14  Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

15  **B.   Rule 12(b)(2)**

16      Federal courts have the power to exercise personal jurisdiction to the extent

17  permitted by the laws of the states in which they sit.  Fed. R. Civ. P. 4(k)(1)(A).

18  "California's long-arm jurisdictional statute is coextensive with federal due process

19  requirements . . . ." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01

20  (9th Cir. 2004); *see* Cal. Civ. Proc. Code § 410.10.  When this is the case, the court

21  inquires whether the defendant "ha[s] certain minimum contacts with [the forum state]

22  such that the maintenance of the suit does not offend 'traditional notions of fair play

23  and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)

24  (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Glencore Grain Rotterdam

25  B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

26      When a defendant seeks dismissal under Rule 12(b)(2), the plaintiff bears the

27  burden of demonstrating that personal jurisdiction is proper.  *Menken v. Emm*,

28  503 F.3d 1050, 1056 (9th Cir. 2007).  Where, as here, a motion to dismiss for lack of

6

1  personal jurisdiction is based on written materials rather than an evidentiary hearing,

2  "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v.*

3  *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  However, the plaintiff cannot "simply

4  rest on the bare allegations of its complaint." *Schwarzenegger*, 374 F.3d at 800.  The

5  court "may not assume the truth of allegations in a pleading which are contradicted by

6  affidavit, but factual conflicts between dueling affidavits must be resolved in the

7  plaintiff's favor." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021)

8  (internal citation and quotation marks omitted).  "Mere 'bare bones' assertions of

9  minimum contacts with the forum or legal conclusions unsupported by specific factual

10  allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*,

11  476 F.3d 756, 766 (9th Cir. 2007).  Nor will "random," "fortuitous," or "attenuated"

12  contacts establish specific personal jurisdiction.  *Burger King Corp. v. Rudzewicz*,

13  471 U.S. 462, 475 (1985).

## IV.    REQUEST FOR JUDICIAL NOTICE

15      As a preliminary matter, Del requests that the Court judicially notice transcripts

16  of Gonzalez's sworn testimony from the California Labor Commissioner's

17  administrative hearings on March 13, 2019, and March 14, 2019.  (Pls.' Req. Judicial

18  Not. ("PRJN") 2, ECF No. 116-1.)  As courts may take judicial notice of "records and

19  reports of administrative bodies," *United States v. Ritchie*, 342 F.3d 903, 909

20  (9th Cir. 2003), the Court **GRANTS** Del's request and takes judicial notice of the

21  transcripts from the California Labor Commissioner's hearings.[3]  (*See* PRJN Exs. 1

22  ("Mar. 13, 2019 Hr'g Tr."), 3 ("Mar. 14, 2019 Hr'g Tr."), ECF No. 116-1.)

## V.    DISCUSSION

24      Defendants move to dismiss on several grounds.  First, they argue the FAC

25  should be dismissed for failure to plead the identity of JG Music.  (Mot. 3–6.)

26  Second, to the extent any claims are asserted against JG Music S.A. de C.V.,

---

[3] The Court **DENIES** all other requests for judicial notice, (*see* PRJN 10 (requesting judicial notice of Gonzalez's letter to Del); Defs.' Req. Judicial Not., ECF No. 110), as the Court need not rely on these documents to resolve the instant Motion.

1    Defendants argue these claims should be dismissed as a matter of law and for lack of

2    personal jurisdiction.  (*Id.* at 6–8, 16–21.)  Third, Defendants assert that Del is

3    time-barred from substituting Gonzalez as DOE 1 and adding claims for inducing

4    breach of contract and intentional interference.  (*Id.* at 8–16.)

5    **A.   JG Music**

6        Defendants first move for dismissal on the grounds that Del "intentionally

7    obscures" and "inconsistently identifie[s]" JG Music's identity by pleading that JG

8    Music is (1) a foreign company, (2) Mexican company, and (3) a public business

9    moniker used by Gonzalez.[4]  (Mot. 1; *see also* FAC ¶¶ 13–14.)

10       The liberal notice pleading standard under Rule 8(a)(2) requires only "a short

11   and plain statement of the claim showing that the pleader is entitled to relief."  The

12   purpose is to give the defendant fair notice of the claims against him and the grounds

13   upon which it rests.  *Twombly*, 550 U.S. at 555.

14       In the FAC, Del re-alleges that JG Music is "a foreign company," and "a

15   Mexican loan-out company" that provides the Band's services.  (FAC ¶ 3, Caption;

16   *see also* Compl. ¶ 3, Caption.)  Del also replaces DOE 1 with Gonzalez.  (FAC ¶ 4.)

17   Del adds allegations that the "JG" in JG Music is the initial for Gonzalez's name,

18   Jesus Jaime Gonzalez Terrazas; and that Gonzalez "held his business out to the public

19   as JG Music," "was the owner of JG Music," or "is now successor-in-interest to JG

20   Music by virtue of claiming to have purchased JG Music."  (*Id.* ¶ 14.)  These

21   allegations reflect Gonzalez's sworn testimony in the California Labor

22   Commissioner's hearings.  (*See* Mar. 13, 2019 Hr'g Tr.; Mar. 14, 2019 Hr'g Tr.)

23   During the hearings, Gonzalez testified that: (1) JG Music is a company and a term he

24

25   ──────────────
[4] Defendants also argue that Plaintiffs plead JG Music is "a non-existent entity using a fictitious
26   business name," (Mot. 4), but no such allegation appears in the FAC, (*see* FAC).  Further,
     Defendants misconstrue the pleadings and argue that Del pleads JG Music is a "successor in interest
27   to a prior company owned by Hernandez." (Mot. 1.)  This is inaccurate.  Del alleges that Gonzalez,
     not JG Music, is a successor-in-interest to Hernandez's ownership in JG Music by purchasing such
28   ownership from Hernandez's widow. (FAC ¶ 14.)  The Court does not consider these arguments.

1  has used since 2012, (Mar. 13, 2019 Hr'g Tr. 99[5]); (2) "JG" in JG Music stands for his

2  name, (Mar. 14, 2019 Hr'g Tr. 195); and (3) he purchased JG Music from Hernandez's

3  widow, (*id.* at 201).

4      Based on these allegations, Del appears to assert claims against JG Music both

5  as a company and as Gonzalez's "doing business as" name.  But "[u]se of a fictitious

6  business name does not create a separate legal entity."  *J & J Sports Prods., Inc. v.*

7  *Flores*, 913 F. Supp. 2d 950, 955–56 (E.D. Cal. 2012); *see also Platte River Ins. Co. v.*

8  *P & E Automation, Inc.*, No. 2:12-cv-05778-JGB (AJWx), 2013 WL 12123688, at *4

9  (C.D. Cal. June 19, 2013) ("Doing business under another name does not create an

10  entity distinct from the person operating the business.").  To the extent Del asserts

11  claims against JG Music as Gonzalez's "doing business as" name, these claims fail to

12  satisfy the notice pleading requirements under Rule 8(a).  As pleaded, it is unclear in

13  Del's claims against JG Music whether it intends to sue JG Music as the company, or

14  Gonzalez "doing business as" JG Music, or both.

15      Accordingly, the Court **GRANTS** Defendants' Motion as Plaintiffs fail to

16  satisfy the notice pleading requirements as to JG Music.  Del may amend the

17  pleadings to clarify the allegations against JG Music.

18  **B.**    **JG Music S.A. de C.V.**

19      Defendants next argue that, if the JG Music that Del is suing is the Mexican

20  company, JG Music S.A. de C.V., then the Court must dismiss Del's first, fourth,

21  seventh, and eight causes of action under Rule 12(b)(6) because JG Music S.A. de

22  C.V. did not exist at the time the agreements at issue were executed.  (Mot. 1, 6–8.)

23  Defendants also move for dismissal under Rule 12(b)(2) for lack of personal

24  jurisdiction over JG Music S.A. de C.V.  (*Id.* at 16–21.)

25      These arguments are misplaced and premature.  JG Music S.A. de C.V. is not a

26  party to this action.  (*See generally* FAC.)  Del also admits it does not know at this

27  stage whether JG Music S.A. de C.V. has any relevance to this action, and may

28

---

[5] The Court cites to the pagination at the bottom right of these transcripts.

convert additional DOES should it later discover that JG Music S.A. de C.V. is a successor-in-interest to the agreements at issue.  (Opp'n 10–11.)  Accordingly, the Court **DENIES** Defendants' Motion on these grounds.

**C.     Gonzalez, Inducing Breach of Contract, and Intentional Interference**

Finally, Defendants assert that Del's breach of contract claims are time-barred under California Code of Civil Procedure ("CCP") section 366.2.  (Mot. 8–11.)  Defendants also argue Del is time-barred from substituting Gonzalez as DOE 1 and adding causes of action against both JG Music and Gonzalez for intentional interference with contract and inducing breach of contract.  (*Id*. 11–16.)

*1.     California Code of Civil Procedure Section 366.2*

Defendants first argue Del's first and fourth causes of action for breach of contract are time-barred under CCP section 366.2.  (Mot. 8–11.)  This argument is predicated on Defendants' assertion that Del cannot allege these claims against JG Music, "a non-existent entity," and that these claims should be brought against Hernandez, who signed on behalf of the non-existent entity.  (*Id.* at 9–10.)  Because Hernandez is deceased, Defendants argue these causes of action are time-barred.  (*Id.* at 11.)

CCP section 366.2(a) provides that:

> If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply.

"Courts have interpreted this language to require that, for § 366.2 to apply, the breach or misconduct must occur prior to the decedent's death, such that the claim for relief existed before the decedent's death and survived the decedent." *Bonner v. City of Long Beach*, No. 2:22-cv-02819-CAS (MAAx), 2023 WL 2266103, at *3 (C.D. Cal. Feb. 27, 2023) (internal quotation marks omitted); *see Darcey v. Taraday*, 196 Cal.

1  App. 4th 962, 984 (2011) (noting the court is "not aware of any case that has applied

2  the statute when the decedent did not commit the injury").

3        CCP section 366.2 does not apply in this case.  "[C]ourts generally have found

4  section 366.2 did not apply or would not apply because the wrongful conduct had not

5  occurred before the decedent's death."  *Rumbaugh v. Harley*, No. 2:17-CV-01970-

6  KJM-AC, 2018 WL 4002854, at *8 (E.D. Cal. Aug. 22, 2018) (collecting cases).

7  Hernandez died in April 2015.  (FAC ¶ 24.)  Del's first and fourth causes of action

8  arise under breaching conduct that occurred in 2016, after Hernandez's death.  (*See id.*

9  ¶¶ 36–40, 57–61.)  Accordingly, the claims are not subject to the one-year statute of

10 limitations under section 366.2 and the Court **DENIES** Defendants' Motion on this

11 basis.

12        *2.    California Statute of Limitations*

13        Defendants contend that federal and state statute of limitations prevent Del from

14 amending the FAC to substitute Gonzalez as DOE 1 and add new causes of action

15 against Gonzalez and JG Music for intentional interference with contractual relations

16 and inducing breach of contract.  (Mot. 11–12.)  Specifically, Defendants argue these

17 amendments do not relate back to the initial Complaint.  (*Id.*)  Del asserts that its

18 amendment relates back and is timely under the discovery rule and equitable tolling.

19 (Opp'n 15–20.)

20        A defendant may raise a motion to dismiss based on the statute of limitations if

21 the running of the limitations period "is apparent on the face of the complaint."

22 *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  A court "may grant a

23 12(b)(6) motion to dismiss on statute of limitations grounds only if the assertions of

24 the complaint, read with the required liberality, would not permit the plaintiff to prove

25 that the statute was tolled."  *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153

26 (9th Cir. 2000) (internal quotation marks omitted).

27        Under California law, "[t]he limitations period for a claim of intentional

28 interference with contract . . . is two years, accruing once each element of the cause of

action is satisfied." *S. Cal. Elec. Firm v. S. Cal. Edison Co.*, 668 F. Supp. 3d 1000, 1022 (C.D. Cal. 2023). Likewise, "[t]he statute of limitations for inducing a breach of contract is two years." *Cal. Expanded Metal Prods. Co. v. ClarkWestern Dietrich Bldg. Sys. LLC*, No. 2:12-cv-10791-DDP (MRWx), 2015 WL 12746230, at \*6 (C.D. Cal. Oct. 2, 2015). As Del filed the instant FAC in 2024—eight years after the alleged conduct occurred in 2016—the claims are barred by the statute of limitation absent some form of tolling. (*See* Compl.; FAC.)

### a. Relation Back

The parties dispute whether the "relation back" doctrine permits Del to replace Gonzalez as a DOE defendant and add intentional interference and inducement claims against JG Music. (Mot. 12–16; Opp'n 17–20.)

"Rule 15(c)(1) incorporates the relation back rules of the law of a state when that state's law provides the applicable statute of limitations." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200 (9th Cir. 2014). As California law provides the applicable statute of limitations in this case, the Court applies California's relation-back standard.

California law provides that "an amended complaint relates back to the original complaint when the amended cause of action (1) rests on the same general set of facts, (2) involves the same injury, and (3) refers to the same instrumentalities as the original complaint." *MacRae v. HCR Manor Care Svcs., LLC*, No. 8:14-cv-00715-DOC (RNBx), 2019 WL 8331462, at \*4 (C.D. Cal. May 13, 2019). Generally, "an amended complaint that adds a new defendant does not relate back to the date of filing the original complaint. *Woo v. Superior Ct.*, 75 Cal App 4th 169, 176 (1999). However, when an amendment "simply corrects a misnomer by which an old defendant was sued, [California] case law recognizes an exception to the general rule of no relation back." *Butler*, 766 F.3d at 1201 (cleaned up). For this exception to apply, "the plaintiff must be 'genuinely ignorant' of the defendant's identity at the time the original complaint is filed." *Id.* at 1202 (quoting *Woo*, 75 Cal App 4th at 177). To be

1    "ignorant," a plaintiff must lack "knowledge of that person's connection with the case

2    or with his injuries."  *Gen. Motors Corp. v. Superior Ct.*, 48 Cal. App. 4th 580, 594

3    (1996).

4        Del fails to establish that the exception for amending DOE defendants applies

5    to Gonzalez.  While Del's opposition cites case law supporting a liberal treatment of

6    the relation back doctrine, Del does not state anywhere in its opposition that it was

7    ignorant of Gonzalez when it initiated this action.  (*See* Opp'n 17–20.)  Defendants,

8    on the other hand, argue that Del sent a "Notice of Breach" to Gonzalez two months

9    prior to the filing of the initial Complaint.  (Mot. 13.)  Based on this record, the Court

10   cannot conclude that Del was ignorant of Gonzalez's identity at the time it initiated

11   this action.  Accordingly, Del's substitution of Gonzalez as DOE 1 does not relate

12   back to the filing of the initial Complaint, and Del's claims against Gonzalez are

13   time-barred unless some form of tolling applies.

14       On the other hand, Del's new claims against JG Music for intentionally

15   interfering with and inducing Lopez's breach of the Del-Lopez Agreement do relate

16   back.  In the initial Complaint, Del alleged that Lopez breached the Del-Lopez

17   Agreement.  (Compl. ¶¶ 43–47.)  The FAC adds claims against JG Music for inducing

18   Lopez to breach the Del-Lopez Agreement and intentionally interfering with the

19   Del-Lopez Agreement.  (FAC ¶¶ 78–93.)  These claims rest on the same set of facts

20   surrounding Lopez's breaching behavior in 2016.  (*Compare* Compl. ¶ 46; *with* FAC

21   ¶¶ 81, 89.)  They also rely on the same instrumentality (through Lopez) and injury for

22   actual damages.  The Court thus **DENIES** Defendants' Motion to dismiss the seventh

23   and eight counts of action against JG Music as these claims relate back to the initial

24   Complaint.

25           b.  Discovery Rule

26       Del argues that the discovery rule permits Del to add claims against Gonzalez

27   because Del recently discovered that Gonzalez entered into various agreements with

28   members of the Band and Lopez in 2015.  (Mot. 14–17; *see also* FAC ¶ 34.)

1    Generally, a statute of limitations does not begin to run until a cause of action

2    accrues, which occurs at "the time when the cause of action is complete with all of its

3    elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005).   The

4    discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or

5    has reason to discover, the cause of action." *Id.* at 807.  To benefit from the discovery

6    rule, a plaintiff "must specifically plead facts to show (1) the time and manner of

7    discovery *and* (2) the inability to have made earlier discovery despite reasonable

8    diligence." *Id*. at 808.

9    The allegations in the FAC are insufficient to invoke the discovery rule.  Absent

10    from the pleadings are any facts showing the time and manner of Del's discovery of

11    Gonzalez's individual agreements with the Band and Lopez, or Del's inability to

12    discover the necessary information despite reasonable diligence.  *See Fox*, 35 Cal. 4th

13    at 808.  While Del argues in its opposition that it discovered these facts from the first

14    amended complaint that Gonzalez filed in the Related Action, (Opp'n 15), Del does

15    not plead this in this case's FAC.  Therefore, as pleaded, the allegations fail to invoke

16    the discovery rule. *See Wolf v. Travolta*, No. 2:24-cv-00938-CAS (VBKx), 2014 WL

17    6685560, at *7 (C.D. Cal. Nov. 24, 2014) (refusing to consider discovery rule

18    arguments raised for the first time in the plaintiff's opposition brief where plaintiff

19    "did not plead supporting facts" in the complaint).

20                          c.  <u>Equitable Tolling</u>

21    Del also argues that Gonzalez and the claims against him should not be

22    dismissed because the doctrine of equitable tolling applies.  (Mot. 15–17.)

23    Equitable tolling is a judicially created doctrine in California that preserves a

24    plaintiff's claims and extends the statute of limitations where the plaintiff pursues one

25    out of several possible legal theories.  *See J.M. v. Huntington Beach Union High Sch.*

26    *Dist.*, 2 Cal. 5th 648, 657 (2017).  To benefit from the equitable tolling doctrine under

27    California law, a plaintiff must meet three conditions: "(1) defendant must have had

28    timely notice of the claim; (2) defendant must not be prejudiced by being required to

1   defend the otherwise barred claim; and (3) plaintiff's conduct must have been

2   reasonable and in good faith." *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999).

3   Additionally, "[p]laintiffs seeking to toll the statute of limitations on various grounds

4   must have included the allegations in their pleadings." *Wasco Prods., Inc. v.*

5   *Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2001).

6          In its opposition, Del argues its claims are equitably tolled because Gonzalez

7   evaded service and then filed petitions before the California Labor Commission,

8   leading to six-year stay of this action. (Opp'n 16.) Gonzalez then "unilaterally

9   dismissed the Labor Commission [proceeding] before its conclusion," and filed a first

10  amended complaint in the Related Action raising new allegations about contracts

11  between himself, the Band, and Lopez that were not present in the Related Action's

12  initial complaint. (*Id.* at 17.) Del contends that Gonzalez cannot be prejudiced by the

13  delay in naming him as a defendant here because Gonzalez caused the delay by

14  evading service, seeking extensions and continuances, and preventing Del's discovery.

15  (*Id.*) While these arguments are pertinent and likely persuasive, the Court cannot

16  consider them as they are not alleged in Del's FAC. *See Wolf*, 2014 WL 6685560,

17  at *9 (refusing to consider equitable tolling arguments made in the plaintiff's

18  opposition and accompanying declaration that did not appear in the operative

19  complaint).

20         As pleaded, Del's substitution of Gonzalez for DOE 1 and addition of claims

21  brought against Gonzalez are thus barred by the statute of limitations because Del

22  does not allege tolling in the FAC. Accordingly, the Court **DISMISSES** Gonzales and

23  the second, third, fifth, sixth, seventh, and eight causes of action against him **WITH**

24  **LEAVE TO AMEND** to allege facts to support the application of the discovery rule

25  and the equitable tolling doctrine.

### VI.   CONCLUSION

27         For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES**

28  **IN PART** Defendant's Motion to Dismiss, (ECF No. 107). The Court **DISMISSES**

**WITH LEAVE TO AMEND** (1) Del's claims against JG Music to the extent such claims are brought against Gonzalez "doing business as" JG Music, and (2) Del's claims against Gonzalez and the second, third, fifth, sixth, seventh, and eight causes of action against him to cure the above-noted deficiencies.  The Court denies the balance of Defendants' Motion.

If Del chooses to amend, it must file its Second Amended Complaint by no later than **thirty (30) days** from the date of this Order, in which case Defendants shall answer or otherwise respond within **thirty (30) days** of the filing.  If Del does not timely amend, this dismissal shall be deemed a dismissal with prejudice of Gonzalez and any claims against him as an individual and "doing business as" JG Music.

**IT IS SO ORDERED.**

February 12, 2025

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**