O

# United States District Court
# Central District of California

| | |
|---|---|
| DEL RECORDS, INC. et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>JG MUSIC et al.,<br><br>            Defendants. | Case № 2:16-cv-03666-ODW (KSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [132]** |

## I.   INTRODUCTION

Plaintiffs Del Records, Inc. ("Del Records") and Del Entertainment, Inc. ("Del Entertainment") bring this action against Defendant Jesus Jaime Gonzalez Terrazas ("Gonzalez"), in his individual capacity and as successor-in-interest to JG Music f/s/o Jose Ariel Camacho Barraza, Cesar Ivan Sanchez Luna, and Omar Samuel Burgos Gerardo p/k/a "Ariel Camacho Y Los Plebes Del Rancho" ("JG Music"). (Second Am. Compl. ("SAC"), ECF No. 128.)  Gonzalez moves to dismiss the Second Amended Complaint. (Mot. Dismiss ("Motion" or "Mot."), ECF No. 132.)  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Gonzalez's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

All factual references derive from the SAC or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

### A. Factual Background

Del Records and Del Entertainment (collectively, "Del") are entertainment companies owned by Angel Del Villar. (SAC ¶ 14.) Del Records is a Mexican-American music record label, and Del Entertainment is a talent management company. (*Id*.)

Between April 2013 and April 2015, Felipe De Jesus Hernandez, using the fictitious name "JG Music," loaned out the services of the musical group "Ariel Camacho Y Los Plebes Del Rancho," now known as "Los Plebes Del Rancho De Ariel Camacho" (the "Band"). (*Id*. ¶ 15.) On or around March 24, 2014, Del and JG Music entered into an exclusive recording agreement (the "Recording Agreement") and a personal management agreement (the "Management Agreement," and collectively with the Recording Agreement, the "Del-JG Agreements") for an initial two-year term. (*Id*. ¶¶ 16, 19.)

Following the execution of and pursuant to the Del-JG Agreements, the Band began producing albums and performing concerts in the United States and Mexico. (*Id*. ¶ 25.) Thereafter, in February 2015, Jose Ariel Camacho Barraza ("Camacho"), the Band's lead member, died in a car accident. (*Id*. ¶ 26.) Del Records signed Jose Manuel Lopez Castro ("Castro") as a replacement for Camacho and as a solo artist, which Del Records and Castro memorialized in an agreement (the "Castro Agreement"). (*Id*. ¶ 27.)

In April 2015, Hernandez also died. (*Id*. ¶ 26.) After Hernandez's death, Gonzalez negotiated a purchase of "all interests, assets, goodwill, and intellectual property rights in 'JG Music'" from Hernandez's widow. (*Id*. ¶ 22.)

Sometime in 2016, Gonzalez took actions with the intent of breaching or interfering with the Del-JG Agreements and the Castro Agreement. First, Gonzalez caused the Band to miss scheduled concerts, events, and interviews. (*Id.* ¶¶ 29–30.) Second, Gonzalez arranged unauthorized concerts for the Band in the United States and Mexico without Del's knowledge, authorization, or approval. (*Id.* ¶ 31.) Third, Gonzalez caused Castro to post unauthorized master recordings and other media online. (*Id.* ¶ 33.) Fourth, Gonzalez caused Castro to fail to deliver an album and master recordings, in breach of Castro's agreements with Del. (*Id*. ¶ 32.)

**B.     Procedural Background**

On May 25, 2016, Del initiated this action against JG Music and Castro, asserting causes of action for breach of contract. (Compl., ECF No. 1.) Gonzalez and Castro, among others, subsequently filed a petition against Del with the California Labor Commissioner. (Stip. Stay 2, ECF No. 38.) On January 22, 2018, at the parties' request, the Court stayed this action pending the resolution of the petitions before the California Labor Commissioner. (Order Stay, ECF No. 39.)

During the parties' proceedings before the Labor Commissioner, Gonzalez produced a letter that he claims he sent to Del on behalf of JG Music. (SAC ¶ 34 n.1.) Gonzalez purportedly sent this letter in February 2016, after he acquired JG Music from Hernandez's wife. (*Id.*) In the letter, titled "Re: Exclusive Recording Agreement for JG Music, Personal Management Agreement," Gonzalez wrote:

> As per contract signed, our preliminary contracts will conclude/terminate in the upcoming month and I JESUS JAIME GONZALEZ (JG MUSIC) wish to properly end/terminate our actual indentures prior to renewal date established. It is worthy to note, JG Music regrets the inconvenience caused for your organization upon this choice.
>
> Hence, the decision of the company is final and JG MUSIC thanks you for your services that your company offered to ours until this point and we wish you all the best for the future projects that you are going to engage in.

> Respectfully,
> Jesus Jaime Gonzalez
> Manager
> JG Music

(SAC Ex. G ("Gonzalez Letter"), ECF No. 128-1 (capitalization and original emphasis omitted).) Del allege that this letter "was never sent and was actually part of Gonzalez's fraudulent backdating scheme." (SAC ¶ 34 n.1.)

On November 9, 2023, the parties informed the Court that the California Labor Commissioner's Office dismissed the petitions before it. (Status Report, ECF No. 94.) Accordingly, the Court lifted the stay, and Gonzalez and JG Music answered the Complaint. (Order Lifting Stay, ECF No. 96; Answer, ECF No. 97.)

On June 20, 2024, Del filed their First Amended Complaint to remove claims against Castro, replace DOE 1 with Gonzalez, and add causes of action against Gonzalez and JG Music for inducing breach of contract and intentional interference. (First Amend. Compl. ("FAC"), ECF No. 104.) Defendants moved to dismiss the First Amended Complaint. (Mot. Dismiss FAC, ECF No. 107.) The Court granted in part Defendants' motion and dismissed with leave to amend. (*See* Order Mot. Dismiss, ECF No. 123.)

On March 14, 2025, Del filed the operative Second Amended Complaint. (*See generally* SAC.) Del assert eight causes of action against (1) Gonzalez, as successor-in-interest to JG Music, for breach of the Del-JG Agreements (Claims One and Four), (*id.* ¶¶ 54–59, 78–83); (2) Gonzalez, in his individual capacity, for intentional interference and inducing breach of the Del-JG Agreements (Claims Two, Three, Five, and Six), (*id.* ¶¶ 60–77, 84–101); and (3) Gonzalez, in his individual capacity, for intentional interference and inducing breach of the Castro Agreement with Del (Claims Seven and Eight), (*id.* ¶¶ 102–119). Gonzalez now moves to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. 9)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Gonzalez argues that Del's first through sixth causes of action fail because Del fail to show that the Del-JG Agreements were valid and enforceable at the time of Gonzalez's alleged breach or interference. (Mot. 9–12.) Gonzalez also argues that Del's first and fourth causes of action fail because Del fail to allege successor-in-interest liability. (*Id.* at 13–15.) Finally, Gonzalez argues that Del's seventh and eighth causes of action fail because Del Entertainment is not a signatory to the Castro Agreement and because Del failed to attach the operative agreement to their SAC. (*Id.* at 15–16.) The Court addresses each of these arguments in turn.

### A. Validity of the Del-JG Agreements

Del's first through sixth causes of action charge Gonzalez with inducing breach of, or tortious interference with, the Del-JG Agreements. (SAC ¶¶ 54–101.) Gonzalez argues that the Del-JG Agreements could not have been valid or enforceable at the time of the alleged inducements and interferences under two grounds: (1) the doctrine of impossibility, and (2) that the Del-JG Agreements relate to the old band (prior to Camacho's passing) and not the new band (with Castro). (Mot. 9–12.)

#### *1. Doctrine of Impossibility*

Gonzalez argues that performance under the Del-JG Agreements is excused due to the deaths of Hernandez and Camacho. (*Id.* at 10–11.) "[T]he doctrine of impossibility or impracticability excuses performance of a contractual obligation when performance is impossible or extremely impracticable." *KB Salt Lake III, LLC v. Fitness Int'l, LLC*, 95 Cal. App. 5th 1032, 1058 (2023). Performance must be objectively impossible: "[i]t is the difference between 'the thing cannot be done' and 'I cannot do it.' The first is objective; the second subjective." *El Rio Oils, Can., Ltd. v. Pac. Coast Asphalt Co.*, 95 Cal. App. 2d 186, 197 (1949) ("The impossibility must consist in the nature of the thing to be done and not in the inability of the obligor to do it.")

The death of a contracting party renders performance impossible when the contract "is of a strictly personal nature." *Janin v. Browne*, 59 Cal. 37, 44 (1881); *cf. Carr v. Progressive Casualty Ins. Co.*, 152 Cal. App. 3d 881, 890 (1984) ("[C]ontractual rights arising under a nonpersonal contract survive the death of a contracting party even though the breach of the contract by the other party, and hence the cause of action against him did not arise until after the death of the decedent."). Purely personal acts include "the agreement of an author to write a particular book, an artist to paint a certain painting, [or] a sculptor to produce a designated statue." *Mackay v. Clark Rig Bldg. Co.*, 5 Cal. App. 2d 44, 58–59 (1935). In other words, the individual who died must have had a "peculiar talent" that the individual was going to employ in her performance of the contract. *Id.* at 59.

Here, Hernandez's death does not excuse performance because the Del-JG Agreements were not "of a strictly personal nature." *Janin*, 59 Cal. at 44. The Del-JG Agreements did not require Hernandez perform a "peculiar talent." *Mackay*, 5 Cal. App. 2d at 58–59. Hernandez's obligations under the Recording Agreement included making the Band available for promotional appearances, delivering albums to Del Records, and advising Del Entertainment of any offers of employment extended to the Band. (SAC ¶¶ 18, 21.) Any person in Hernandez's position could perform these obligations, and Gonzalez has not shown that these responsibilities require "personal skills, talents or characteristics which no one other than" Hernandez could provide. *Farnon v. Cole*, 259 Cal. App. 2d 855, 858 (1968).

Based on the pleadings alone, Camacho's death also does not excuse performance. Gonzalez points to two provisions in the Del-JG Agreements, both of which provide that the Band's "abilities are exceptional, extraordinary and unique." (Reply 5, ECF No. 134 (emphasis omitted).) Gonzalez argues that these provisions make Camacho's presence a necessary condition of the contract, and therefore, performance became impossible once he died. (*Id.*) However, the Del-JG Agreements referred to the Band in the aggregate, and not Camacho alone. *Cf.*

*Farnon*, 259 Cal. App. 2d at 859 (holding that a contract between an individual singer and his musical director was a personal services contract because the parties specifically contemplated the singer's continued "personal appearance or personal recording"). It is therefore plausible that the exceptionality, extraordinariness, and uniqueness of the Band did not depend on Camacho. If Gonzalez later proves that Camacho provided the Band with those traits, then Gonzalez could be entitled to an impossibility defense. But that is for later proceedings and not the proper subject of a motion to dismiss.

The parties' actions also weigh against impossibility. First, even after Camacho's death, the Band continued to perform, albeit with Castro instead of Camacho. (SAC ¶ 29.) In 2016, Del scheduled twenty-one concerts for the Band in its new form with Castro. (*Id.*) Although the Band "failed to appear" for most of the scheduled concerts, it did appear for one. (*Id.*) Thus, Gonzalez (as JG Music) was able to perform his obligation to make the Band available under the JG-Del Agreements. Second, in his 2016 letter to Del, Gonzalez referred to the Del-JG Agreements in the present tense, writing that the "contracts will conclude/terminate in the upcoming month." (SAC ¶ 34 n.1; Gonzalez Letter.) As Del allege that Gonzalez claims that he tried to terminate the Del-JG Agreements in February 2016, it is plausible that the parties understood the contract to still be valid—and performance not excused due to impossibility.

Finally, Gonzalez argues that, because the JG-Del Agreements were unassignable, the contracts terminated upon Hernandez's death. (Mot. 10; Reply 3–4.) This argument is unavailing. The California Supreme Court case *California Packing Corp. v. Lopez* is instructive. 207 Cal. 600 (1929). There, a sharecropper and a farm owner entered into an "asparagus cropping contract" that contained a no-assignment clause. *Id.* at 601–02. When the sharecropper died, his brother took over and began cultivating asparagus. *Id.* at 602. The farm owner sued to evict the brother, arguing that the no-assignment clause prohibited contract transfer of the contract upon the

1 sharecropper's death. *Id.* at 603. The California Supreme Court rejected the argument, finding that no-assignment clauses, such as the ones in the Del-JG Agreements, "forbid[] only voluntary assignment by the parties; [they are] not violated by an involuntary assignment by operation of law." *Id.* Applying *California Packing* to the no-assignment clauses in the JG-Del Agreements, the Court finds that the obligations and rights under the Del-JG Agreements could have passed from Hernandez upon his death, despite the presence of the no-assignment clauses.

Gonzalez has not shown, based on the pleading alone, that performance under the Del-JG Agreements was objectively impossible. Thus, dismissal on this ground is not appropriate.

### 2. Old Band v. New Band

Gonzalez next argues that the Del-JG Agreements "are expressly limited" to the services of the Band when it included Camacho, and not the Band without Camacho. (Mot. 10–11.) This argument is essentially the same as Gonzalez's impossibility argument: that performance must be excused because the Del-JG Agreements specifically contemplated Camacho's presence. It fails for the same reasons. Gonzalez also fails to meaningfully cite any case law that would support this argument as an independent ground; he essentially abandons the argument in his reply brief. (*See generally* Mot.; Reply.) Thus, the Court incorporates its analysis above and denies the Motion on this basis. *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to . . . case authority are generally deemed waived."); *Compton Unified Sch. Dist. v. A.F.*, No. 2:09-cv-01427-AHM (CWx), 2010 WL 1727674, at *7 n.5 (C.D. Cal. Apr. 26, 2010) (declining to address arguments abandoned in the reply brief).

For the above reasons, the Court denies the Motion as to Gonzalez's arguments based on validity of the Del-JG Agreements.

**B.     Successor Liability**

Gonzalez also argues that Del fail to allege successor-in-interest liability, which would require dismissal of Del's first and fourth causes of action. (Mot. 13–15.) In their first and fourth causes of action, Del allege that Gonzalez, who was not a party to the Del-JG Agreements, is nevertheless liable for breach of said agreements as successor-in-interest to Hernandez. (SAC ¶¶ 54–59, 78–83.) Generally, "only a signatory to a contract may be liable for any breach." *Clemens v. Am. Warranty Corp.*, 193 Cal. App. 3d 444, 452 (1987). As a result, an acquiring corporation generally does not assume the selling corporation's debts and liabilities. *Fisher v. Allis-Chambers Corp. Prod. Liab. Tr.*, 95 Cal. App. 4th 1182, 1188 (2002). However, under the equitable doctrine of successor-in-interest liability, successor corporations can be liable for the "unlawful acts of predecessor companies." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1036 (C.D. Cal. 2015). A plaintiff invoking successor-in-interest liability must adequately plead one of the following: (1) "there is an express or implied agreement of assumption," (2) "the transaction amounts to a consolidation or merger," (3) "the purchasing corporation is a mere continuation of the seller," or (4) "the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Fisher*, 95 Cal. App. 4th at 1188. When pleading an express or implied agreement of assumption, a plaintiff "must not only plead the existence of an assumption of liability but either the terms of that assumption of liability (if express) or the factual circumstances giving rise to an assumption of liability (if implied)." *Gerritsen*, 112 F. Supp. 3d at 1037.

Del's pleading contains adequate allegations that Gonzalez impliedly agreed to assume the Del-JG Agreements. In particular, Gonzalez's February 2, 2016 letter raises a plausible inference that Gonzalez impliedly assumed the Del-JG Agreements. (*See* Opp'n 19, ECF No. 133.) Gonzalez, representing himself as "Manager" of "JG MUSIC," purports to have written the letter nearly a year after Hernandez's April 2015 death. (*See* SAC ¶ 26.) In the letter, Gonzalez holds himself out as having

the power to "end/terminate" JG Music's obligations under the Del-JG Agreements. (*Id.*)  This raises the plausible inference that Gonzalez had impliedly assumed the contracts after Hernandez's death, then attempted to exercise his and JG Music's power to terminate the Del-JG Agreements.[2]

Gonzalez argues that the letter "does not state that [he] assumed any rights or duties; does not reference Hernandez's widow; and does not reference the transfer of any rights to Gonzalez." (Reply 10.)  However, Gonzalez does not account for the Rule 12(b)(6) standard.  At this juncture of the litigation, the Court is bound to construe the letter "in the light most favorable" to Del.  *Lee*, 250 F.3d at 679.  Gonzalez may eventually prove that the letter does not "evidence that Gonzalez acquired" Hernandez's obligations under the Del-JG Agreements, but that is an inquiry for summary judgment or trial. (Reply 10.)

Thus, the Court declines to dismiss the first and fourth causes of action on this basis.

C.  **The Castro Agreement**

Finally, Gonzalez argues that Del fail to state a claim based on breach of the Castro Agreement. (Mot. 15–16.)  In their seventh and eighth causes of action, Del allege that Gonzalez breached and induced the breach of the Castro Agreement. Gonzalez argues that Del Entertainment cannot bring these claims because it is not a party to the contract. (Mot. 15–16.)  Gonzalez also argues that Del failed to attach the operative Castro Agreement to the Second Amended Complaint, and that the operative contract was signed on May 18, 2015, not on May 7, 2015, as seen in the pleading attachment.  (*Id.* ¶ 16.)  Del fail to address the first point. (Opp'n 21.)  The Court deems it conceded.  *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,

---

[2] Del allege that Gonzalez backdated the Gonzalez Letter before producing it in the parties' Labor Commissioner's proceedings.  (Opp'n 19 n.9.)  Even if true, this would not change the Court's conclusion.  If Gonzalez forged the letter that shows him terminating the Del-JG Agreements, it is no less plausible that he impliedly assumed Hernandez's rights and obligations—including the power to terminate—under the Del-JG Agreements.

802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). Regarding the second point, Del argues that, had Gonzalez raised this point earlier, Del would have agreed to amend the SAC to attach the operative contract. (*Id.* at 21–22.) Thus, the Court will grant Gonzalez's motion to dismiss Del's seventh and eighth causes of action, but with leave to amend only to attach the operative contract.[3]

---

[3] This litigation is now in its eighth year and will almost certainly continue into a ninth. The Court, recognizing that it must enable both the just and *efficient* resolution of cases, will not entertain further amendments to the pleadings beyond this.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Gonzalez's Motion to Dismiss. (ECF No. 132.) Specifically, the Court **DISMISSES** Del's seventh and eighth causes of action **WITH LEAVE TO AMEND** and **DENIES** Gonzalez's Motion in all other respects.

If Del wish to amend, they must file their Third Amended Complaint no later than **fourteen (14) days** from the date of this order. If Del do not timely amend, the dismissal of the seventh and eighth causes of action shall be deemed with prejudice as of the lapse of the deadline. If Del do elect to amend, any amendment must be limited to referencing and attaching the operative Castro Agreement and must reflect that only Del Records brings those causes of action. Furthermore, if Del choose to amend, Gonzalez shall answer within **fourteen days** after Del file the Third Amended Complaint.

**IT IS SO ORDERED.**

October 14, 2025

_____
             **OTIS D. WRIGHT, II**
       **UNITED STATES DISTRICT JUDGE**