**O**

# United States District Court
# Central District of California

DEL RECORDS, INC. et al.,

Plaintiffs,

v.

JG MUSIC et al.,

Defendants.

Case № 2:16-cv-03666-ODW (KSx)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [163]**

## I. INTRODUCTION

Plaintiffs Del Records, Inc. and Del Entertainment, Inc. (collectively, "Del"), bring this action against Defendant Jesus Jaime Gonzalez Terrazas ("Gonzalez"), alleging that Gonzalez breached or interfered with several of Del's contracts. (Third Am. Compl. ("TAC"), Dkt. No. 141.) Gonzalez now moves for summary judgment. (Mot. Summ. J. ("Motion" or "Mot."), Dkt. No. 132.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Gonzalez's Motion.[1]

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

Del Records and Del Entertainment are entertainment companies owned by Angel Del Villar. (SUF 13, Dkt. No. 166-2.) Del Records is a Mexican-American music record label, and Del Entertainment is a talent management company. (TAC ¶ 14.)

In 2012, Ariel Camacho and Gonzalez formed the band "Ariel Camacho y Los Plebes del Rancho," a popular Mexican ranchera band (the "Band"). (SUF 1–2.) The Band consisted of Camacho, Cesar Ivan Sanchez Luna ("Sanchez"), and Israel Meza Carrillo ("Meza"). (SUF 3.) Felipe De Jesus Hernandez Rojas ("Hernandez") served as the Band's promoter. (SUF 5.) Hernandez also employed Gonzalez, who served as the Band's producer. (SUF 7, 9.) In April 2013, Hernandez and his wife began using the fictious name "JG Music"—which Gonzalez first used—in connection with their work with the Band. (SUF 8, 11.) The parties dispute whether and how Gonzalez assigned the rights to use "JG Music" to Hernandez and his wife. (SUF 10.)

On March 24, 2014, Del and Hernandez, using the name "JG Music," entered into two contracts for services of the Band: an exclusive recording agreement (the "Recording Agreement") and a personal management agreement (the "Management Agreement," and collectively with the Recording Agreement, the "Del-JG Agreements"). (SUF 14–15.) Among other things, the Del-JG Agreements required the Band to record albums and perform concerts in exchange for a percentage of royalties. (Decl. James G. Sammataro ISO Mot. ("Sammataro Decl.") Ex. 2 ("Recording Agreement") ¶¶ 1, 5, Dkt. No. 163-4.) Gonzalez was not a signatory to the Del-JG Agreements. (SUF 28.)

On February 25, 2015, Camacho died. (SUF 34.) Following Camacho's death, Band members Sanchez and Meza, along with Jose Manuel Castro Lopez ("Castro"),

---

[2] The Court derives the factual background, some of which is disputed, from Gonzalez's Statement of Uncontroverted Facts ("SUF"), Del's Additional Material Facts ("AMF"), and Responses thereto (collectively, the "Statements"), in addition to the parties' clearly and specifically cited evidence. *See* C.D. Cal. L.R. 56-1 to 56-4.

formed the band "Los Plebes del Rancho de Ariel Camacho" to honor Camacho's legacy (the "Reconstituted Band"). (SUF 42–43; AMF 75, Dkt. No. 168-1.) To memorialize this arrangement, Del and Castro entered into a recording agreement (the "Castro Agreement"). (Sammataro Decl. Ex. 4 ("Castro Agreement"), Dkt. No. 163-6.) The Castro Agreement also provided that Castro would record and perform for Del as a solo artist. (*Id.*)

On April 17, 2015, Hernandez also died. (SUF 37.) Gonzalez claims that shortly after Hernandez's death, Hernandez's widow assigned the rights to use the name "JG Music" back to Gonzalez. (SUF 38.)

Throughout 2015 and into 2016, the Reconstituted Band continued to perform in shows. (AMF 81–83.) Del paid at least some money to members of the Reconstituted Band for their performances. (AMF 81–83.) However, in February 2016, Gonzalez severed all ties with Del. (AMF 93.) In a letter addressed to Del Villar, Gonzalez wrote:

> As per contract signed, our preliminary contracts will conclude/terminate in the upcoming month and I JESUS JAIME GONZALEZ (JG MUSIC) wish to properly end/terminate our actual indentures prior to renewal date established. It is worthy to note, JG Music regrets the inconvenience caused for your organization upon this choice.
>
> Hence, the decision of the company is final and JG MUSIC thanks you for your services that your company offered to ours until this point and we wish you all the best for the future projects that you are going to engage in.
>
> Respectfully,
> Jesus Jaime Gonzalez
> Manager
> JG Music

(the "Gonzalez Letter") (Decl. Aaron C. Liskin ISO Opp'n ("Liskin Decl.") Ex. 14 ("Gonzalez Letter"), Dkt. No. 166-5.)[3] Castro also testifies that, around this time, Gonzalez convinced Castro to stop working with Del. (Sammataro Decl. Ex. 11 ("Castro Dep. Tr.") 30:17–21, Dkt. No. 163-13.)

Based on the above allegations, Del asserts eight causes of action against (1) Gonzalez, as successor-in-interest to JG Music, for breach of the Del-JG Agreements (Counts One and Four), (TAC ¶¶ 54–59, 78–83); (2) Gonzalez, in his individual capacity, for intentional interference and inducing breach of the Del-JG Agreements (Counts Two, Three, Five, and Six), (*id.* ¶¶ 60–77, 84–101); and (3) Gonzalez, in his individual capacity, for intentional interference and inducing breach of the Castro Agreement (Counts Seven and Eight), (*id.* ¶¶ 102–19).[4] Gonzalez now moves for summary judgment on all eight causes of action under Federal Rule of Civil Procedure ("Rule") 56. (Mot. 9)

## III. EVIDENTIARY OBJECTIONS

Both parties object to portions of the other's evidence. Much of the material to which they object is unnecessary to the resolution of the Motion, and the Court need not resolve those objections. For similar reasons, relevance- and foundation-based objections are moot in the context of summary judgment motions. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Moreover, the Court does not consider improper argument and legal conclusions in the parties' Statements,

---

[3] Gonzalez objects to Del's reliance on the Gonzalez Letter in its briefing, arguing that the Gonzalez Letter is unauthenticated and cannot be considered in a motion for summary judgment. (Reply 5, Dkt. No. 168 (citing *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)).) However, as the Ninth Circuit in *Orr* also notes, "documents produced by a party in discovery [are] deemed authentic when offered by the party-opponent." *Orr*, 285 F.3d at 777 n.3. As Gonzalez produced the Gonzalez Letter in this litigation, (Liskin Decl. ¶ 15), he cannot now claim that it is unauthenticated, and thus the Court **OVERRULES** his objection.

[4] In a consolidated action, Gonzalez brings related intellectual property, fraud, and other tort claims against Del and Del Villar. First Am. Compl., *Terrazas v. Del Recs. Inc.*, No. 2:17-cv-02152-ODW (KSx) (C.D. Cal. filed June 20, 2024), Dkt. No. 99. Del answered and brought counterclaims against Gonzalez, Sanchez, and Castro in that action. First Am. Countercl., *Terrazas v. Del Recs. Inc.*, No. 2:17-cv-02152-ODW (KSx) (C.D. Cal. filed Mar. 5, 2025), Dkt. No. 116.

(*see* Scheduling & Case Management Order ("Scheduling Order") 7–9, Dkt. No. 100), so any objections on those bases are also moot. As for hearsay, a court may not grant a summary judgment motion on the basis of hearsay evidence, but it may deny a summary judgment motion on the basis of hearsay evidence as long as it finds that the hearsay evidence would be admissible at trial. Fed. R. Civ. P. 56(e); *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Finally, to the extent the Court relies on objected-to evidence in this order without further objection, those objections have been thoroughly considered and are overruled. *See Burch*, 443 F. Supp. 2d at 1122 (proceeding with only necessary evidentiary rulings).

## IV. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 324. The nonmoving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to his case when he will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation modified). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced. *Id.*

## V. DISCUSSION

Gonzalez seeks summary judgment on all eight of Del's causes of action. (Mot. 1.) First, Gonzalez seeks summary judgment on Del's first through sixth causes of action, arguing that Del fails to show that the Del-JG Agreements were valid and enforceable at the time of Gonzalez's alleged breach or interference. (*Id.* at 14–19.) In a separate argument, Gonzalez seeks summary judgment on Del's first and fourth causes of action, arguing Del has not demonstrated that Gonzalez ratified, assumed, or was assigned the Del-JG Agreements. (*Id.* at 9.) Gonzalez also seeks summary judgment on Del's second, third, fifth, and sixth causes of action, arguing Del has not demonstrated that Gonzalez knew the Del-JG Agreements were still valid and that Gonzalez was the substantial factor in their breach or disruption. (*Id.* at 21.) Finally, Gonzalez seeks summary judgment on Del's seventh and eighth causes of action,

contending that Del has not shown Gonzalez was the substantial factor of Castro's breach or disruption of the Castro Agreement. (*Id.*)

**A. Validity of the Del-JG Agreements**

Del's first through sixth causes of action charge Gonzalez with breaching, inducing breach of, or tortious interference with, the Del-JG Agreements. (TAC ¶¶ 54–101.) Gonzalez argues that the Del-JG Agreements could not have been valid or enforceable at the time of Gonzalez's alleged breach or interference on three grounds: (1) that performance was excused under the doctrine of impossibility; (2) that the Del-JG Agreements relate to the old band (prior to Camacho's passing) and not the Reconstituted Band; and (3) that Del's nonperformance discharged any purported duty to perform by Gonzalez. (Mot. 14–19.) None are persuasive.

*1. Doctrine of Impossibility*

Gonzalez argues that neither he nor any other person or entity could have breached the Del-JG Agreements because performance under the Del-JG Agreements is excused due to the deaths of Hernandez and Camacho. (*Id.* at 16–17, 19.) "[T]he doctrine of impossibility or impracticability excuses performance of a contractual obligation when performance is impossible or extremely impracticable." *KB Salt Lake III, LLC v. Fitness Int'l, LLC*, 95 Cal. App. 5th 1032, 1058 (2023). Performance must be objectively impossible: "[i]t is the difference between 'the thing cannot be done' and 'I cannot do it.' The first is objective; the second subjective." *El Rio Oils, Can., Ltd. v. Pac. Coast Asphalt Co.*, 95 Cal. App. 2d 186, 197 (1949).

The death of a contracting party renders performance impossible when the contract "is of a strictly personal nature." *Janin v. Browne*, 59 Cal. 37, 44 (1881); *cf. Carr v. Progressive Cas. Ins. Co.*, 152 Cal. App. 3d 881, 890 (1984) ("[C]ontractual rights arising under a nonpersonal contract survive the death of a contracting party even though the breach of the contract by the other party, and hence the cause of action against him did not arise until after the death of the decedent."). Purely personal acts include "the agreement of an author to write a particular book, an artist

to paint a certain painting, [or] a sculptor to produce a designated statue." *Mackay v. Clark Rig Bldg. Co.*, 5 Cal. App. 2d 44, 58–59 (1935). In other words, the individual who died must have had a "peculiar talent" that the individual was going to employ in her performance of the contract. *Id.* at 59.

Based on the factual record before the Court, Gonzalez fails to demonstrate that performance was impossible. First, Gonzalez fails to address Hernandez's death and whether his death renders the Del-JG Agreements impossible to perform. As the Court previously noted, it is likely that "[a]ny person in Hernandez's position could perform" Hernandez's obligations as outlined in the Del-JG Agreements, including making the band available and delivering albums. (Order Grant in Part Mot. Dismiss 7 ("Order MTD"), Dkt. No. 140; Recording Agreement 1.)

Second, Gonzalez does not demonstrate why Camacho's death renders the Del-JG Agreements impossible to perform. The Court previously explained what Gonzalez would have to demonstrate to prevail on summary judgment: evidence demonstrating that Camacho, individually, provided the Band with exceptionality, extraordinariness, and uniqueness. (Order MTD 8.) However, Gonzalez fails to provide any evidence in this regard. (*See generally* Mot.) Instead, Gonzalez falls back on the same arguments he made in his motion to dismiss, pointing to a provision in the Del-JG Agreements providing that the Band's "abilities are exceptional, extraordinary and unique." (*Id.* at 17.) However, as the Court previously noted, the Del-JG Agreements referred to the Band in the aggregate, and not specifically to Camacho. (Order MTD 7–8 (citing *Fanon v Cole*, 259 Cal. App. 2d 855, 859 (1968)).) There remains a genuine dispute over whether Camacho, individually, provided exceptionality, extraordinariness, and uniqueness to the Band.

Gonzalez has not shown that performance under the Del-JG Agreements was objectively impossible. Thus, he is not entitled to summary judgment on this ground.

*2. Old Band v. Reconstituted Band*

Gonzalez next argues that the Del-JG Agreements do not apply to the Reconstituted Band. (Mot. 14–15, 20.) However, as the Court previously noted, this argument is essentially the same as Gonzalez's impossibility argument: that performance must be excused because the Del-JG Agreements specifically contemplated Camacho's presence. (*See* Order MTD 9.)

Gonzalez attempts to distinguish this argument from his impossibility argument by citing two cases. (Mot. 14–15.) He barely explains their relevance, but even after independent review, the Court finds that neither is apposite. First, Gonzalez cites the Seventh Circuit case in *Williams v. Mercury Record Corp.*, 295 F.2d 284, 286 (7th Cir. 1961). (Mot. 14.) In *Williams*, the Seventh Circuit held that a recording contract between a singing quintet and a recording company did not also apply to the quintet's individual performers. 295 F.2d at 286. There, a member of the quintet sought declaratory judgment that his individual services were not covered by a recording contract between the quintet and the recording company. *Id.* at 284. Looking at the language of the recording contract, the Seventh Circuit held that the use of the group name throughout the contract "support[ed] the construction that [the recording company] was dealing with these singers only as a group singing together, and not as so many individuals singing solo performances." *Id.* at 286. Here, unlike in *Williams*, Del is not seeking to enforce the Del-JG Agreements against individual members of the Band. Indeed, *Williams* seems to stand for the opposite of what Gonzalez seeks to use it for, as it found that the contract binds the group, rather than any individual performer. *Williams* of little persuasive value to the Court.

Second, Gonzalez cites the unpublished California Court of Appeal case *L'heureux v. Miller*, No. B322839, 2023 WL 4014484, at *15 (Cal. Ct. App. June 15, 2023). Similar to *Williams*, *L'Heureux* stands for the proposition that an individual who signs a contract in his capacity as an officer of an organization is not automatically bound by that contract. 2023 WL 4014484, at *15. Again however, Del

is not seeking to enforce the Del-JG Agreements against the Band's individual members, but rather against the Band as a whole. *L'Heureux* is also of little persuasive value to the Court.

In sum, Gonzalez fails to distinguish this argument from his impossibility argument. At bottom, there remains a factual dispute over whether the Band and the Reconstituted Band are truly different for purposes of the Del-JG Agreements. It presents a similar question to the classic "Ship of Theseus" paradox: whether a ship remains the same even after its parts are replaced. The Court cannot resolve this age-old thought experiment; rather, it should be up to a jury to determine whether the Del-JG Agreements continued to apply to the band even after Hernandez's and Camacho's deaths.

*3. Nonperformance*

Finally, Gonzalez asserts an affirmative defense and argues that even if the Del-JG Agreements were still valid at the time of Gonzalez's alleged breach, any breach was excused because Del "failed to perform the most basic, core functions" required by the Del-JG Agreements. (Mot. 15–16.) "When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011). "Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact." *Id.*

First, Gonzalez contends that Del's failure to pay the Band any royalties or compensation constitutes a material breach of the Del-JG Agreements. (Mot. 15, 18–19; SUF 31.) Though Del's failure to pay is undisputed, Gonzalez does not even begin to demonstrate, as is his burden, whether this failure was material. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (holding that, where the moving party bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial").

Neither does Gonzalez attempt to refute Del's argument that it did not owe any royalties. (Opp'n 20–21, Dkt. No. 166; *see generally* Reply.)

Second, Gonzalez argues that Del failed to provide Gonzalez with notice and an opportunity to cure his supposed breach. (Mot. 16.) Specifically, Gonzalez points to Del's March 17, 2016 Notice of Breach Letter ("Notice of Breach"). (Sammatoro Decl. Ex. 5 ("Breach Letter"), Dkt. No. 163-7.) Gonzalez argues that Del did not specify that Gonzalez breached the Del-JG Agreements by failing to record or deliver albums, making the notice deficient under the Del-JG Agreements. (Mot. 16.) However, "if one party notifies the other . . . that he will not perform the contract on his part, the other party may enforce the contract without previously performing conditions in favor of the party giving such notice of nonperformance." *Singh v. Burkhart*, 218 Cal. App. 2d 285, 292–93 (1963). Here, it is undisputed that by February 2016—one month before Del sent the Notice of Breach—Gonzalez severed all ties with Del. (AMF 93.) Moreover, Castro testified that Gonzalez convinced him to stop working with Del. (Castro Dep. Tr. 30:17–21.) Viewed in the light most favorable to Del, there remains at least a genuine issue of material fact as to whether Gonzalez's actions constitute a repudiation of the Del-JG Agreements, and thus, excused Del from complying with the notice-and-cure provision in those agreements. *See Kemp Bros. Const., Inc. v. Titan Elec. Corp.*, No. G041695, 2011 WL 2238970, at *5 (Cal. Ct. App. June 8, 2011) ("[Defendant's] repudiation excuses [plaintiff] from all of its contract duties, including the notice and cure provision.").

For these reasons, the Court finds that Gonzalez has not carried his burden of demonstrating that he is entitled to summary judgment on his affirmative defense of nonperformance.

Thus, summary judgment is not warranted on Del's first through sixth causes of action based on Gonzalez's argument that the Del-JG Agreements are invalid or unenforceable.

**B. Breach of Contract**

Gonzalez also seeks summary judgment on Del's first and fourth causes of action—breach of the Del-JG Agreements—on the ground that Gonzalez is not a signatory to the Del-JG Agreements or successor-in-interest to Hernandez and thus could not have breached the Del-JG Agreements. (Mot. 13–15.)

Generally, "only a signatory to a contract may be liable for any breach." *Clemens v. Am. Warranty Corp.*, 193 Cal. App. 3d 444, 452 (1987). Although Del does not dispute that Gonzalez was not a party to the Del-JG Agreements, Del identifies several contractual or equitable theories that, if proven, could still make Gonzalez liable for breach of the Del-JG Agreements: (1) voluntary assignment; (2) ratification; and (3) successor liability.[5] (Opp'n 14–15.) All fail.

*1. Voluntary Assignment*

Del's first theory to impose contract liability on Gonzalez is that some person, or some entity, voluntarily assigned the Del-JG Agreements to Gonzalez. (*Id.* at 12–15.) It is black letter law that "contractual right[s] can be assigned." Restatement (Second) of Contracts § 317. "[A]ssignment, to be effectual, must be a manifestation to another person by the owner of the right indicating his intention to transfer . . . ." *Cockerell v. Title Ins. Co. & Tr. Co.*, 42 Cal. 2d 284, 292 (1954).

Del's voluntary assignment theory fails because Del offers no evidence that any person or entity ever assigned the Del-JG Agreements to Gonzalez. In the Motion, Gonzalez raises what the parties refer to as the Marisol Assignment, in which Hernandez's wife purportedly conveyed the rights to use "JG Music" to Gonzalez. (Mot. 12–14.) Gonzalez argues that the Marisol Assignment does not assign Gonzalez any rights to the Del-JG Agreements. (*Id.*) However, in Del's opposition brief, Del

---

[5] Del also implies that "Gonzalez's own exercise of JG Music's contractual authority" is a standalone theory of successor liability. (Opp'n 13.) Del offers no case authority or any further explanation, and the Court declines to consider this undeveloped argument. *Ventress v. Japan Airlines*, 747 F.3d 716, 723 (9th Cir. 2014). In any event, the "contractual authority" theory appears to be a mix of ratification and implied assumption, which the Court addresses below.

expressly disclaims the Marisol Assignment, arguing that it "did not rely on that document in bringing its claims" and even claiming that the Marisol Assignment is fabricated. (Opp'n 14–15.) Thus, Del disclaims the Marisol Assignment, yet it fails to identify any other instance, oral or written, where anyone assigned the Del-JG Agreements to Gonzalez. (*See generally id.*) Del does not even identify who it contends assigned the Del-JG Agreements to Gonzalez.

In sum, Del fails to come forward with any evidence to support its theory that the Del-JG Agreements were assigned to Gonzalez. This failure to offer any evidence of a voluntary assignment dooms Del's breach of contract claim against Gonzalez under this theory. *Celotex*, 477 U.S. at 322–23 (requiring summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case").

*2. Ratification*

Del's second theory to impose contract liability on Gonzalez is that Gonzalez ratified the Del-JG Agreements. "Ratification is the adoption of a previously formed contract . . . and, by the very nature of the act of ratification . . . the party confirming becomes a party to the contract." *Kraft v. Wilson*, 37 P. 790, 792 (Cal. 1894). However, Del's ratification theory, or any similar theory, does not appear anywhere in Del's Third Amended Complaint. (*See generally* TAC); *Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1326 (2012) (noting that ratification is separate from successor liability). That alone is sufficient to reject Del's ratification theory. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.").

In any event, Del's ratification theory fails because Del has not demonstrated the requisite principal-agent relationship necessary for its ratification theory. As "ratification contemplates an act by one person [on] behalf of another, there must exist at the time the unauthorized act was done a relationship, either actual or assumed, of

principal and agent." *Anderson v. Fay Imp. Co.*, 134 Cal. App. 2d 738, 748 (1955). However, only a principal can be bound via ratification, as it "is the subsequent adoption by one person of an act which another without authority assumed to do as his agent." *Id.*; *see also Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972) ("Ratification is the voluntary election by a person to adopt in some manner as his own an act *which was purportedly done on his behalf by another person*." (emphasis added)). Del's ratification theory fails because it is undisputed that "Gonzalez was employed by, and worked under the direction of, Hernandez," meaning that Hernandez must have been Gonzalez's principal and not the other way around. (SUF 9.) Thus, Gonzalez cannot, as a matter of law, have ratified Hernandez's actions.

*3. Successor Liability*

Del's third theory to impose contract liability on Gonzalez is that Gonzalez assumed the Del-JG Agreement under successor liability. Under the equitable doctrine of successor liability, successor corporations can be liable for the "unlawful acts of predecessor companies." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1036 (C.D. Cal. 2015). A plaintiff invoking successor liability must adequately plead that: (1) "there is an express or implied agreement of assumption," (2) "the transaction amounts to a consolidation or merger," (3) "the purchasing corporation is a mere continuation of the seller," or (4) "the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Fisher v. Allis-Chalmers Corp. Prod. Liab. Tr.*, 95 Cal. App. 4th 1182, 1188 (2002).

Del relies on the first option, implied assumption of liability. (Mot. 15–16.) When pleading implied assumption, a plaintiff "must not only plead the existence of an assumption of liability but [also] . . . the factual circumstances giving rise to an assumption of liability." *Gerritsen*, 112 F. Supp. 3d at 1037. "Whether an implied assumption of liability occurred depends on the intent of the parties, and an assumption may be applied when a party accepts the rights and privileges of a contract." *Pacini v. Nationstar Mortg., LLC*, No. C 12-04606 SI, 2013 WL 292441,

at *4 (N.D. Cal. June 13, 2013). Thus, the critical inquiry is whether there is evidence demonstrating a party's "implied intent to assume" both rights and liability. *Schwartz v. Pillsbury, Inc.*, 969 F.2d 840, 845 (9th Cir. 1992) (rejecting implied assumption of liability theory because plaintiffs failed to demonstrate that defendant intended to assume a third-party's tort liability).

In its effort to show that Gonzalez must have impliedly assumed the benefits and liabilities associated with the Del-JG Agreements, Del points only to the Gonzalez Letter, as it did in its briefing on Gonzalez's motion to dismiss. (Mot. 16.) In that letter, Gonzalez, represents himself as "Manager" of "JG MUSIC" and holds himself out as having the power to "end/terminate" JG Music's obligations under the Del-JG Agreements. (Gonzalez Letter.) The Court previously found that the Gonzalez Letter, standing alone, raised a plausible inference that Gonzalez assumed JG Music's rights and liabilities under the Del-JG Agreements. (Order MTD 10–11.) However, at the summary judgment stage, it amounts to nothing more than a scintilla of evidence, such that a jury could not reasonably use it to find for Del on the implied assumption issue. The letter does not provide a jury with any basis with which to find that Gonzalez *intended* to assume *both* the rights and liabilities under the Del-JG Agreements. Instead, even if read in the light most charitably to Del, the letter could only prove that Gonzalez believed he had the one right to terminate the Del-JG Agreements. The letter does not prove that Gonzlaez believed he had any other rights or liabilities associated with the Del-JG Agreements. Without evidence demonstrating Gonzalez assumed other rights and liabilities under the Del-JG Agreement—and Del points to none—Del cannot show that Gonzalez impliedly assumed the Del-JG Agreements as a matter of law.

In sum, Del fails to make a sufficient showing to support its three breach of contract theories against Gonzalez. As Del fails to prove Gonzalez can be held liable for breaching the Del-JG Agreements, the Court **GRANTS** summary judgment for Gonzalez on Del's first and fourth causes of action.

**C. Interference and Inducement**

Gonzalez also seeks summary judgment on Del's second, third, fifth, and sixth causes of action, which charge Gonzalez with interfering with, or inducing the Reconstituted Band's breach of, the Del-JG Agreements. (Mot. 19–21.) The tort of intentional interference with contractual relations requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). The tort of inducement of breach of contract is nearly identical, except that it requires only breach, whereas intentional interference requires either breach or disruption. *Shamblin v. Berge*, 166 Cal. App. 3d 118, 122–23 (1985).

Other than the invalidity arguments that the Court rejected above, Gonzalez advances two threadbare arguments aimed at defeating Del's interference/inducement claims: (1) Gonzalez could not have had "knowledge" of the Del-JG Agreements because he assumed they were ineffective and no longer binding; and (2) Gonzlez was not a substantial factor of any disruption or interference. (Mot. 21.) Neither argument succeeds.

*1. Knowledge of the Del-JG Agreements*

Gonzalez's first argument is that he could not have had known "that his alleged activities with the [Reconstituted] Band would induce breach or interfere with the [Del-JG] Agreements, since he understood that those contracts were ineffective and no longer binding following Camacho's death." (*Id.*) In support, Gonzalez cites only the fact that the "Del Entities understood that the [Del-JG] Agreements did not bind the [Reconstituted] Band." (*Id.* (citing SUF 47).)

First, the fact Gonzalez cites is properly disputed. Second, although Gonzalez cites Del's Rule 30(b)(6) witness's testimony in support of the fact, that witness did not admit that Del "understood that the Del Agreements did not bind the

[Reconstituted Band]." (SUF 47.) Third, even if Del understood that the Del-JG Agreements did not bind the Reconstituted Band, that fact does not demonstrate *Gonzalez's* lack of knowledge or understanding of the Del-JG Agreements.

Finally, in the Gonzalez Letter, Gonzalez referred to the Del-JG Agreements in the present tense, writing that the "contracts will conclude/terminate in the upcoming month." (Gonzalez Letter.) Thus, the Gonzalez Letter could also lead a jury to find that Gonzalez thought the Del-JG Agreements were still effective.

As Gonzalez fails to demonstrate that no triable dispute exists as to his knowledge of the Del-JG Agreements, the Court declines to grant summary judgment on this ground.

*2. Substantial Factor*

Gonzalez's second argument is that he could not be a substantial factor in any breach or disruption because the Reconstituted Band "itself decided for independent reasons to sever any relationship with [Del]." (Mot. 21.) In support, Gonzalez again cites only one fact: that the "[Reconstituted] Band severed ties with Del Entities in or around 2016." (*Id.* (citing SUF 52).) It is self-evident that the fact that the Reconstituted Band severed its ties with Del is not the same as the proposition that the Reconstituted Band severed its ties with Del *for independent reasons*. Moreover, this fact runs headfirst into deposition testimony showing that Gonzalez convinced at least one member of the Reconstituted Band to stop working with Del. (Castro Dep. Tr. 30:17–21.) As Gonzalez fails to demonstrate that no dispute exists as to whether Gonzalez's conduct was a substantial factor of the Reconstituted Band's breach of the Del-JG Agreements, the Court declines to grant summary judgment on this ground.

In sum, Gonzalez fails to demonstrate the absence of a triable issue of fact regarding Del's interference and inducement causes of action. Thus, the Court declines to grant summary judgment on Del's second, third, fifth, and sixth causes of action.

**D. The Castro Agreement**

Finally, Gonzalez seeks summary judgment on Del's seventh and eighth causes of action, in which Del alleges that Gonzalez interfered with, or induced the breach of, the Castro Agreement. (Mot. 21; TAC ¶¶ 102–19.) Specifically, Gonzalez argues that Del cannot show that Gonzalez was the cause of any disruption or breach of the Castro Agreement because "Castro testified that he elected to stop working with Del Records in 2016 of his own record." (Mot. 21 (citing SUF 66).) This, again, runs headfirst into Castro's own deposition testimony showing that Gonzalez convinced Castro to stop working with Del. (Castro Dep. Tr. 30:17–21.) Thus, there remains a factual dispute regarding whether Gonzalez was the cause of any disruption or breach of the Castro Agreement, and consequently, the Court declines to grant summary judgment on Del's seventh and eight causes of action.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Gonzalez's Motion for Summary Judgment. (Dkt. No. 163.) Specifically, the Court **GRANTS** summary judgment in favor of Gonzalez on Del's first and fourth causes of action, and **DENIES** the balance of the Motion.

**IT IS SO ORDERED.**

July 31, 2026



**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**